1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  LORENZO GREGGE, JR., | Case No.  1:15-cv-00176-LJO-SAB |
| 12          Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS |
| 13       v. | |
| 14  MATTHEW KATE, et al., | (ECF Nos. 68, 77, 79) |
| 15          Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

16

17       Currently before the Court is Defendants Cate[1] and Yates' motion to dismiss pursuant to

18  Federal Rule of Civil Procedure 12(b)(6).

19                                                    **I.**

20                                  **PROCEDURAL HISTORY**

21       Plaintiff Lorenzo Gregge, Jr., a state prisoner proceeding pro se and informa pauperis,

22  filed this action on September 14, 2009, in the Sacramento Division of the Eastern District of

23  California alleging deliberate indifference in violation of the Eighth Amendment.  (ECF No. 1.)

24  On March 25, 2010, the district judge dismissed this action for failure to state a claim as the

25  allegations were based on supervisory liability.  (ECF Nos. 14, 16.)  Plaintiff filed a notice of

26  appeal on May 28, 2010.  On July 25, 2011, the Ninth Circuit reversed and remanded the action

27  _____

28  [1] Plaintiff incorrectly spells Defendants name "Kate," however the Court shall adopt the correct spelling of Defendant Cate's name.

1

1  finding that, liberally construed, Plaintiff's complaint did not allege a theory of <u>respondeat</u>

2  <u>superior</u> liability, but alleged that Defendants implemented a policy that resulted in the denial of

3  a constitutional right.  (ECF No. 22.)

4          The District Court ordered the complaint in this action be served; and on February 6,

5  2013, the district judge issued an order dismissing the action for failure to exhaust

6  administrative remedies.  (ECF Nos. 56, 57.)  On February 21, 2013, Plaintiff filed a notice of

7  appeal.  (ECF No. 59.)  On August 1, 2014, the Ninth Circuit reversed and remanded the action

8  finding that Plaintiff's administrative appeal was sufficient to alert prison personnel to the

9  nature of the wrong alleged.  (ECF No. 65.)  On September 26, 2014, Defendants Cate and

10  Yates filed a motion to dismiss.  (ECF No. 68.)  On November 25, 2014, Plaintiff filed a notice

11  of substitution of attorney and he is now represented by counsel.  (ECF No. 74.)  After seeking

12  an extension of time, Plaintiff filed an opposition to the motion to dismiss on December 7,

13  2014.  (ECF No. 77.)  Defendants filed a reply on December 15, 2014.  (ECF No. 79.)  On

14  February 3, 2015, this action was transferred to the Fresno Division of the Eastern District of

15  California.  (ECF NO. 82.)  The action was then related to the actions entitled <u>Jackson, et al. v.</u>

16  <u>State of California, et al.</u>, 1:13-cv-01055-LJO-SAB; and <u>Smith, et al. v. Schwarzeneggar, et al.</u>,

17  1:14-cv-00060-LJO-SAB and assigned to the undersigned.

18                                                    **II.**

19                                    **COMPLAINT ALLEGATIONS**

20          On December 22, 2005, Plaintiff was transferred to Pleasant Valley State Prison.

21  (Compl. ¶ 5, ECF No. 1.)  Plaintiff alleges that Defendants had actual knowledge of the

22  endemic of a dangerous environmental hazard, Valley Fever.  (<u>Id.</u> at ¶ 6.)  Plaintiff was housed

23  on the D facility and observed medical bulletins concerning Valley Fever.  (<u>Id.</u> at ¶ 8.)  Plaintiff

24  was diagnosed with Valley Fever on September 13, 2006.  (<u>Id.</u> at ¶ 10.)  On July 26, 2007,

25  Plaintiff was diagnosed with "Cocci-meningitis" a form of Valley Fever that can end in an early

26  death.  (<u>Id.</u> at ¶ 11.)

27          On August 1, 2007, Plaintiff was hospitalized with complications of Valley Fever.  (<u>Id.</u>

28  at ¶ 11.)  Upon his release from the hospital, Plaintiff was informed that there was no cure for

                                                    2

Valley Fever; and he would have to take medication for the remainder of his life.  (Id. at ¶ 13.)

Plaintiff brings this action against Defendant Matthew Cate who was the Secretary of Correction for the State of California and was "legally responsible for the care, custody, treatment, training, discipline and employment of inmates" at PVSP.  (Id. at ¶ 16.)  Defendant Cate allegedly promoted a policy of continuing the operation of PVSP after he was aware that numerous individuals had died of the disease.  (Id.)  Plaintiff also brings this action against Defendant James Yates, who was the Warden at PVSP and was legally responsible for the operation of the prison and the welfare of the inmates.  (Id. at ¶ 17.)  Plaintiff alleges that Defendant Yates was aware of the unreasonable risk of harm and was deliberately indifferent and would be subject to personal liability in this action.  (Id.)  Plaintiff brings the action against Defendant Cate in his official and individual capacities and Defendant Yates in his individual capacity.[2]  (Id. at ¶ 21.)

Plaintiff is seeking declaratory relief and compensatory and punitive damages.  (Id. at ¶¶ 22, 23, 24.)

### III.

### MOTION TO DISMISS LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.

---

[2] Plaintiff also brought suit against the California Department of Corrections and Rehabilitation and Susan Hubbard.  However, claims against these defendants have been dismissed from this action.  (ECF Nos. 24, 34, 39.)

1  In deciding whether a complaint states a claim, the Ninth Circuit has found that two

2  principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

3  "may not simply recite the elements of a cause of action, but must contain sufficient allegations

4  of underlying facts to give fair notice and to enable the opposing party to defend itself

5  effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair

6  to require the defendant to be subjected to the expenses associated with discovery and continued

7  litigation, the factual allegations of the complaint, which are taken as true, must plausibly

8  suggest an entitlement to relief.  Starr, 652 F.3d at 1216.

9                                              **IV.**

10                               **ANALYSIS AND DISCUSSION**

11  Defendants move for the Court to consider the prior request for voluntary dismissal of

12  Defendant Cate and the prior motion to dismiss.  (Defendants' Memorandum of Points and

13  Authorities in Support of Motion to Dismiss 2, ECF No. 68-1.)  Defendants contend that the

14  motion to dismiss should be granted on the grounds that 1) Defendant Cate was not personally

15  involved because he was not employed by CDCR; 2) Defendant Yates did not control who was

16  transferred to PVSP; and 3) Defendants Cate and Yates are entitled to qualified immunity.[3]

17  (Id.)

18  Plaintiff does not object to the dismissal of Defendant Cate as he was not the Secretary

19  of the CDCR at the time he contracted Valley Fever.  (Plaintiff Lorenzo Gregge's Memorandum

20  of Points and Authorities in Opposition to Defendant's Motion to Dismiss and Request for

21  Leave to File a First Amended Complaint, ECF No. 77.)  Plaintiff argues that the allegations in

22  the complaint, liberally construed, are sufficient to state a claim that Defendant Yates as

23  Warden of PVSP was a state official with policy input.  (Id. at 17-18.)  Plaintiff seeks leave to

24  file an amended complaint.  (Id. at 16.)

25  In considering a motion to dismiss for failure to state a claim, the court generally

26

---

27  [3] Defendants also moved to dismiss on the ground that Plaintiff has not alleged that Defendants had a policy that interfered with his medical care or impermissibly retained him at PVSP.  Plaintiff replies that his complaint did not raise claims regarding his medical care or failure to transfer.  Since these claims were not raised in the complaint,

28  the Court will not address the ground raised in the motion to dismiss.

considers only the pleadings and must accept as true the allegations in the complaint.  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension Trust Fund, 332 F.3d 1198, 1201, 1203 (9th Cir. 2002).  Additionally, the court is to "construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Hebbe, 627 F.3d at 342.

A motion to dismiss for failure to state a claim is properly granted where the complaint lacks "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory."  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)).

Initially, as Plaintiff does not oppose the motion to dismiss Defendant Cate, the Court recommends that Defendant Cate be dismissed from this action.

### A.    Plaintiff Fails to State a Claim Against Defendant Yates

Plaintiff argues that liberally construed he states a claim that Defendant Yates created, crafted, or shaped a policy that adversely affected Plaintiff.  (ECF No. 77 at 16-18.)  Plaintiff has brought this action against Defendant Yates in his individual capacity.  (ECF No. 1 at ¶ 21.)  To state a claim under section 1983, Plaintiff must demonstrate that Defendant Yates personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Under Twombly and Iqbal "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678.  This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  Id.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability.  Id.  Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550

1   U.S. at 555.   Finally, the conclusory allegations in the complaint are not entitled to the

2   presumption of truth.  Iqbal, 556 U.S. at 681.

3       Liberally construed Plaintiff's complaint alleges that Defendant Yates knew that Valley

4   Fever had been prevalent at PVSP since 2004.  (ECF No. 1 at ¶ 6.)  There was a policy of

5   continuing to operate PVSP after numerous reports of Valley Fever and deaths from the disease.

6   (Id. at ¶ 16.)  Defendant Yates was the Warden at PVSP and received information regarding

7   Valley Fever "from some kind of source" and that it caused an unreasonable risk of harm to

8   Plaintiff.  (Id. at ¶ 17.)

9       Plaintiff has failed to include any facts to support his conclusory allegations that

10  Defendant Yates was aware that Plaintiff was at an unreasonable risk of harm or that Defendant

11  Yates acted or failed to act in a manner that violated Plaintiff's federal rights.  While Plaintiff

12  argues that the complaint could be construed to allege that Defendant Yates was involved in

13  creating a policy that allowed inmates to be housed at PVSP or acquiesced to the policy, the

14  complaint is devoid of any such allegations.   "[A] liberal interpretation of a civil rights

15  complaint may not supply essential elements of the claim that were not initially pled."  Bruns v.

16  Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of

17  Regents, 673 F.2d 266, 268 (9th Cir. 1982)).  Plaintiff has not included any factual allegations

18  that Defendant Yates was involved in creating the policy Plaintiff alleged in his complaint, that

19  of continuing to allow PVSP to operate.

20      Further, when resolving a claim under the Eighth Amendment against individual

21  defendants, causation must be resolved via "a very individualized approach which accounts for

22  the duties, discretion, and means of each defendant."   Leer v. Murphy, 844 F.2d 628, 633-34

23  (9th Cir. 1988) citing with approval Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982)

24  ("There can be no duty, the breach of which is actionable, to do that which is beyond the power,

25  authority, or means of the charged party.   One may be callously indifferent to the fate of

26  prisoners and yet not be liable for their injuries.   Those whose callous indifference results in

27  liability are those under a duty -- possessed of authority and means -- to prevent the injury.")

28      Plaintiff specifically alleged that Defendant Cate promoted the policy of continuing to

1  operate PVSP after he was aware of numerous cases of Valley Fever and deaths from the

2  disease.  (<u>Id.</u> at ¶ 16.)  The complaint is devoid of any allegations that Defendant Yates

3  implemented the policy or by virtue of his position as Warden had the authority to decide to

4  continue operating PVSP.  Plaintiff fails to state a plausible claim that Defendant Yates

5  personally participated in a deprivation of his rights.

6        **B.**    **Qualified Immunity**

7        The parties disagree on whether Defendants are entitled to qualified immunity.  The

8  doctrine of qualified immunity protects government officials from civil liability where "their

9  conduct does not violate clearly established statutory or constitutional rights of which a

10  reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting

11  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to

12  qualified immunity the court uses a two part inquiry.  <u>Saucier v. Katz</u>, 533 U.S. 194, 200

13  (2001).  The court determines if the facts as alleged state a violation of a constitutional right and

14  if the right is clearly established so that a reasonable official would have known that his conduct

15  was unlawful.  <u>Saucier</u>, 533 U.S. at 200.  A district court is "permitted to exercise their sound

16  discretion in deciding which of the two prongs of the qualified immunity analysis should be

17  addressed first in light of the circumstances in the particular case at hand." <u>Pearson</u>, 555 U.S. at

18  236.  The inquiry as to whether the right was clearly established is "solely a question of law for

19  the judge." <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting <u>Tortu v. Las Vegas</u>

20  <u>Metro. Police Dep't.</u> 556 F.3d 1075, 1085 (9th Cir. 2009)).

21        1.   <u>Cruel and Unusual Punishment in Violation of the Eighth Amendment</u>

22        To constitute cruel and unusual punishment in violation of the Eighth Amendment,

23  prison conditions must involve "the wanton and unnecessary infliction of pain." <u>Rhodes v.</u>

24  <u>Chapman</u>, 452 U.S. 337, 347 (1981).  A prisoner's claim does not rise to the level of an Eighth

25  Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

26  civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate

27  indifference in doing so.' " <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

28  <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes, 452 U.S. at 347) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

>    2.   The Law is Not Clearly Established that Housing an Inmate in an Area Where Valley Fever is Prevalent Violates the Eighth Amendment

Defendants contend that they are entitled to qualified immunity because the decisions from the Eastern District from 2005 to 2007 would not have provided notice that continuing to operate PVSP was unconstitutional.  (ECF No. 68-1 at 12.)  Plaintiff counters that cases during this time period were primarily brought by pro se defendants and did not plead facts correctly, properly document the gravity of the problem, or chronicle the severe nature of the disease to so many inmates.  (ECF No. 77 at 26.)

However, qualified immunity shields an official from personal liability where he reasonably believes that his conduct complies with the law.  Pearson, 555 U.S. at 244.  " 'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.' "  Stanton v. Sims, ___ U.S. ___, 134 S.Ct. 3, 5 (2013) (citations omitted).  It is not required that there be a case directly on point before concluding that the law is clearly

established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. al–Kidd, 131 S.Ct. 2074, 2085 (2011).  To decide whether Defendants are entitled to qualified immunity, the question is whether it was clearly established that housing Plaintiff in a prison in an areas endemic for Valley Fever, a naturally occurring soil-borne fungus which can lead to serious illness, would violate the Eighth Amendment.

As Plaintiff argues, District Judge O'Neill recently found that the mere exposure to Valley Fever was sufficient to state a claim for deliberate indifference.  Beagle v. Schwarzenegger, No. 14-cv-00430-LJO-SAB (E.D. Cal. July, 25, 2014) at ECF No. 74.  What is clear here is that there continues to be disagreement between the courts as to whether it is a violation of an inmate's civil rights to be housed in an area where Valley Fever is prevalent.  As Judge O'Neill recognized in his opinion in Beagle, the weight of authority is that an inmate cannot state a claim for violation of the Eighth Amendment based on confinement in a location where Valley Fever is present.  Beagle, No. 14-cv-00430-LJO-SAB (July 25, 2014) (ECF No. 74 at 9:18-10:13).

Judge O'Neill considered the Supreme Court's decision in Helling v. McKinney, 509 U.S. 25 (1993) which addressed a conditions of confinement claim based on environmental expose to find that mere exposure to Valley Fever could state an Eighth Amendment claim.  In Helling, the plaintiff alleged that he was housed with a cellmate who smoked up to five packages of cigarettes per day exposing the plaintiff to environmental tobacco smoke ("ETS") that posed a risk to his health.  Id. at 27.  A court trial was held and after a directed verdict, judgment was entered for the defendants.  Id. at 29.  The Court of Appeals affirmed the lower court decision on the basis of qualified immunity, but held that, although the plaintiff did not have a constitutional right to a smoke free environment, plaintiff had stated a cause of action under the Eighth Amendment by alleging he was involuntarily exposed to levels of ETS that posed an unreasonable risk of harm to his future health.  Id.  In support of the judgment, the court of appeals noted the scientific opinion supporting plaintiff's contention that exposure to ETS could endanger an individual's health and "society's attitude had evolved to the point that

1  involuntary exposure to unreasonably dangerous levels of ETS violated current standards of

2  decency." Id.

3      The issue the Supreme Court addressed was whether plaintiff had stated an Eighth

4  Amendment claim by alleging his compelled exposure to ETS posed an unreasonable risk to his

5  health. Id. at 31. The Supreme Court rejected the defendants' argument that only deliberate

6  indifference to an inmate's current serious health problem is actionable under the Eighth

7  Amendment, and held that the Eighth Amendment protects against future harm. Helling, 509

8  U.S. at 33. The Court remanded stating:

> The Court of Appeals has ruled that McKinney's claim is that the level of ETS to
> which he has been involuntarily exposed is such that his future health is
> unreasonably endangered and has remanded to permit McKinney to attempt to
> prove his case. In the course of such proof, he must also establish that it is
> contrary to current standards of decency for anyone to be so exposed against his
> will and that prison officials are deliberately indifferent to his plight. We cannot
> rule at this juncture that it will be impossible for McKinney, on remand, to prove
> an Eighth Amendment violation based on exposure to ETS.

Id. at 35.

> [W]ith respect to the objective factor, determining whether McKinney's
> conditions of confinement violate the Eighth Amendment requires more than a
> scientific and statistical inquiry into the seriousness of the potential harm and the
> likelihood that such injury to health will actually be caused by exposure to ETS.
> It also requires a court to assess whether society considers the risk that the
> prisoner complains of to be so grave that it violates contemporary standards of
> decency to expose anyone unwillingly to such a risk. In other words, the prisoner
> must show that the risk of which he complains is not one that today's society
> chooses to tolerate.

Id. at 36.

20      The Eight Amendment prohibits punishments that are incompatible with "the evolving

21  standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429

22  U.S. 97, 102 (1976) (citations omitted). Conditions that cannot be said to be cruel and unusual

23  under contemporary standards of decency do not violate the Eighth Amendment. Rhodes, 452

24  U.S. at 347.

25      In his complaint, Plaintiff has included a document by Drs. Richard Deaner and Hans

26  Einstein entitled "Valley Fever: A primer for non-medical people to show that Valley Fever is a

serious disease that can end in death.[4]  (ECF No. 1 at 20-23.[5])  Proceeds from the sale of the document benefit the Coccidioidal Vaccine Research Fund.  (Id. at 21.)  This document states that, in California, Valley Fever most frequently occurs in Kern County.  (Id. at 21.)  An individual who lives in an area where the cocci fungus is prevalent is likely to be affected by Valley Fever.  (Id.)  "For instance, nearly 60% of the residents of Bakersfield, Kern County have positive skin tests for [V]alley [F]ever."  (Id.)  This positive skin test means that they have contracted the disease.  (Id.)

Symptoms of Valley Fever are those commonly associated with the flu, including fever, aching, chills, sweats, fatigue, cough, and headache.  (Id. at 23.)  About 60 % of all cases of Valley Fever are mild and the symptoms amount to a slight cold that quickly subsides.  (Id.)  The remaining 40 % of Valley Fever cases have more severe symptoms which includes the flu like symptoms described above.  (Id.)  Along with flu like symptoms there might be skin rashes and joint aches.  (Id.)  It can take six months or more for these symptoms to subside.  (Id.)  Darker skinned individuals are more likely to have the disease spread to other areas of the body, this is called dissemination.  (Id.)  However, the most dangerous form of dissemination, infection of the brain lining, is most likely to occur in Caucasians, especially Caucasian males.  (Id.)

Significantly, expose to Valley Fever does not violate contemporary standards of decency.  Over a million people reside in the San Joaquin Valley where Valley Fever spores are present.[6]  See United States Census Bureau, State & County QuickFacts, Kern County,

---

[4] As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion.  United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011).  However, the incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if : (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document."  Corinthian Colleges, 655 F3d at 999.

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[6] Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

California (2013 estimated population of 864,124) http://www.census.gov/quickfacts/#table/PST045214/06029,00 (enter Kern County, California); Fresno County California (2013 estimated population of 955,272) same (enter Fresno County, California) last visited Feb. 6, 2015.  Plaintiff was housed at PVSP which is located in Coalinga, California.   See   Pleasant   Valley   State   Prison   HomePage   located   at http://www.cdcr.ca.gov/Facilities_Locator/PVSP.html.   Approximately eighteen thousand people live, work, and raise their families in the vicinity of PVSP; and West Hills Community College is also located in Coalinga.   See City of Coalinga HomePage located at http://www.coalinga.com/?pg=1 (last visited February 9, 2015).

Plaintiff argues that the State's failure to take action "cannot apparently be explained just by antipathy or indifference to prisoners, for PVSP like all prisons is not only where thousands of prisoners reside, but where hundreds of guards work, and family members, state social workers, plumbers, electricians and other subcontractors, as well as private attorneys routinely visit." (ECF No. 77 at 8-9.)  Clearly, the risk of exposure to Valley Fever is a risk that today's society chooses to tolerate.[7]

It is for these reasons that even today, this Court agrees with those courts that find being housed in an area in which Valley Fever was prevalent is not sufficient to state a claim.  See also Williams v. Biter, No. 1:14-cv-02076-AWI-GSA PC, 2015 WL 1830770, at *3 (E.D. Cal. April 9, 2015 (finding that being housed at Kern Valley State Prison where Valley Fever spores are present insufficient to state a claim); Sullivan v. Kramer, No. 1:13-cv-00275-DLB-PC, 2014 WL 1664983, at *5 (E.D. Cal. April 23, 2014) (being confined in an area where Valley Fever spores exist is insufficient to state a claim for deliberate indifference); Willis v. Yates, No. 1:08-cv-00125-0WW-SMS PC, 2009 WL 3486674, at *3 (E.D. Cal. Oct. 23, 2009) (risk of contracting Valley Fever by being housed at PVSP and fact that inmate contracted Valley Fever

---

[7] Plaintiff also argues that he was not from the San Joaquin Valley, and therefore, did not have immunities to Valley Fever.  However, people move into the San Joaquin Valley every year who have not previously been exposed to Valley Fever.  It is contracting Valley Fever that causes an individual to become immune.  (ECF No. 1 at 21-22.)

insufficient to state a claim); but cf. Lua v. Smith, No. 1:14-cv-00019-LJO-MJS, 2014 WL 1308605, at *2 (E.D. Cal. Mar. 31, 2014) (first prong of deliberate indifference claim satisfied where plaintiff identifies a factor responsible for increasing the risk of contraction or severity of infection).[8]  As Judge O'Neil recognized in his opinion in Beagle, the weight of authority is that an inmate cannot state a claim for violation of the Eighth Amendment based on confinement in a location where Valley Fever is present.  Beagle, No. 14-cv-00430-LJO-SAB (July 25, 2014) (ECF No. 74 at 9:18-10:13).

Plaintiff alleges that he was transferred to PVSP in 2005 and diagnosed with Valley Fever in 2006.  (ECF No. 1 at ¶¶ 5, 10.)  At the time of Plaintiff's transfer and contraction of Valley Fever it was not clearly established that environmental exposure of an inmate to and organism that could cause a serious risk of harm would violate his constitutional rights. Defendants did not have fair notice that housing inmates in an area that Valley Fever was prevalent would violate the Eighth Amendment.  Chappell v. Mandeville, 706 F.3d 1053, 1057 (9th Cir. 2013) (court is to consider whether an officer would have fair notice that his conduct was unlawful and that any mistake to the contrary would be unreasonable).

In reviewing decisional law, the Court finds a Seventh Circuit case which is factually analogous to this action.  In Carroll v. DeTella, 255 F.3d 470 (7th Cir. 2001), the plaintiff alleged that he was exposed to drinking water that was contaminated with radium.  255 F.3d at 471-72.  The plaintiff contended that over a four year period he was exposed to unsafe levels of radium that were in excess of the maximum set by the Federal Environmental Protection Agency, while prison guards were provided with bottled water.  Id. at 472.  There were 80 other Illinois water systems that also had radium in their water supply, but there was no evidence regarding the actual radium level in those communities' water supply.  Id.  The Seventh Circuit

---

[8] Plaintiff argues that he has actually contracted Valley Fever and now has a severe disease process.  (ECF No. 77 at 23.)  However, the issue of whether the objective standard has been met is not dependent upon the inmate suffering harm.  It is the exposure to the substantial risk of serious harm that violates the Eighth Amendment. Helling, 509 U.S. at 36.  Not every injury inflicted upon an inmate gives rise to a federal cause of action.  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).  Plaintiff's allegations that he has suffered injury would be relevant to any claims that could be brought under state law, but the fact that he suffered injury is not sufficient to show that he was exposed to a serious risk of substantial harm.  Helling, 509 U.S. at 36.

found that:

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate, Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. McNeil v. Lane, 16 F.3d 123, 125 (7th Cir.1993); Steading v. Thompson, 941 F.2d 498 (7th Cir.1991); Harris v. Fleming, 839 F.2d 1232, 1235–36 (7th Cir.1988); Clemmons v. Bohannon, 956 F.2d 1523, 1527 (10th Cir.1992) (en banc). Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. McNeil v. Lane, supra, 16 F.3d at 125; Givens v. Jones, 900 F.2d 1229, 1234 (8th Cir.1990). It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures. If the environmental authorities think there's no reason to do anything about a contaminant because its concentration is less than half the maximum in a proposed revision of the existing standards, prison officials cannot be faulted for not thinking it necessary for them to do anything either. They can defer to the superior expertise of those authorities.

Carroll, 255 F.3d at 472-73. Carroll's finding that inmates are not entitled to safer conditions than those enjoyed by substantial numbers of non-imprisoned Americans is equally applicable here.

In this instance, the existing precedent does not place the question of whether a prison official is deliberately indifferent by housing an inmate in an area where Valley Fever is present beyond debate. Plaintiff points to no case that held that merely housing an inmate in an area in which Valley Fever was prevalent is sufficient to state a claim prior to 2007, and as previously discussed supra, the right established in Hellings is distinguishable.

Plaintiff relies on two unpublished decisions, Smith v. Schwarzenegger, 393 Fed.App'x 518 (9th Cir. 2010) and Johnson v. Pleasant Valley State Prison, 505 F3d.App'x 631 (9th Cir. 2013) to support the argument that Defendants acted with deliberate indifference. However, these decisions, published years after Plaintiff contracted Valley Fever, could not provide notice for conduct that occurred prior to 2007. Further, "[a]n unpublished disposition is, more or less, a letter from the court to parties familiar with the facts, announcing the result and the essential rationale of the court's decision." Hart v. Massanari, 266 F.3d 1155, 1178 (9th Cir. 2001).

1  "[T]he disposition is not written in a way that will be fully intelligible to those unfamiliar with

2  the case, and the rule of law is not announced in a way that makes it suitable for governing

3  future cases." Hart, 266 F.3d at 1177-78. "Unpublished dispositions and orders of [the Ninth

4  Circuit] are not precedent, except when relevant under the doctrine of law of the case or rules of

5  claim preclusion or issue preclusion." CTA9 Rule 36-3.

6      Plaintiff argues that the facts here are comparable to the disease scenarios in two

7  unpublished cases, Brigaerts v. Cardoza, 952 F.2d 1399 (9th Cir. 1992), and Muhammad v.

8  Turbin, 199 F.3d 1332 (9th Cir. 1999). However, in those actions the Court was addressing

9  exposure to a contagious disease. Brigaerts, 952 F.2d at *2 (repeated exposure to contagious

10 disease may violate the Eighth Amendment); Muhammad, 199 F.3d at *1 (exposure to chicken

11 pox and tuberculosis). The Court finds these cases distinguishable. Contemporary standards of

12 decency are violated where an individual with active chicken pox or tuberculosis exposes

13 healthy individuals to the disease. While today's society does not tolerate healthy individuals

14 being exposed to people with contagious diseases, Valley Fever is not a contagious disease and

15 exposure to Valley Fever is a risk that society tolerates. Similarly, these are unpublished

16 decisions that are not precedent within the Circuit. CTA9 Rule 36-3.

17     Based upon the weight of authority, the Court finds that a reasonable official would not

18 have had notice prior to 2007 that housing inmates in a location where Valley Fever was

19 prevalent would violate an inmate's civil rights. Defendants are entitled to qualified immunity

20 for the policy of continuing to operate PVSP after prison officials were aware of the prevalence

21 of Valley Fever in the area and that numerous individuals had died of the disease. Brown v.

22 Oregon Dep't of Corrections, 751 F.3d 983, 990 (9th Cir. 2014) (defendants are not liable for

23 violation of a right that was not clearly established at the time the violation occurred).

24     Plaintiff is seeking leave to amend his complaint to correct all pleading deficiencies. In

25 his opposition to the motion, Plaintiff contends that he is at a higher risk of developing

26 disseminated disease due to his race. The Court is concurrently addressing this issue in three of

27 the related cases, Nawabi v. Cate, No. 1:13-cv-00272-LJO-SAB (E.D. Cal.); Jackson v. State of

28 California, No. 1:13-01055-LJO-SAB (E.D. Cal.); Smith v. Schwarzenegger, No. 1:14-cv-

1  00060-LJO-SAB (E.D. Cal.), and has found that Defendants are entitled to qualified immunity

2  even for claims by those inmates who allege that they are at a higher risk of developing

3  disseminated disease.  In <u>Smith</u> the Court has found that:

> Courts within this district have differed on whether an inmate who is subject to a risk factor can state a claim for deliberate indifference.  <u>See Smith v. Brown</u>, No. 1:12-cv-0238-AWI-JLT (PC), 2012 WL 1999858, at *4 (E.D. Cal. June 4, 2012) (allegation of increased risk of Valley Fever due to asthma insufficient to state a claim); <u>Jones v. Igbinosa</u>, No. , at *3-4 (E.D. Cal. July 19, 2010) (allegation that African-American inmate at greater risk of contracting Valley Fever is insufficient to state a claim); <u>Gilbert v. Yates</u>, No. 1:09CV02050 AWI DLB, 2010 WL 5113116, at *4 (E.D. Cal. Dec. 9, 2010) subsequently aff'd, 479 F. App'x 93 (9th Cir. 2012) (inmate alleging risk factors for Valley Fever did not state a claim for deliberate indifference for failure to transfer him from PVSP); <u>Hunter v. Yates</u>, No. 1:07-cv-00151-AWI-SMS-PC, 2009 WL 233791, at *3 (E.D. Cal. January 30, 2009) (inmate alleging high risk of contracting Valley Fever states a claim under the low pleading standard); <u>Humphrey v. Yates</u>, No. 1:09-cv-00075-LJO-DLB (PC), 2009 WL 3620556, at * 3 (E.D. Cal. October 28, 2009) (finding allegation that inmate caught Valley Fever twice due to preexisting respiratory conditions is sufficient to state a claim); <u>Barnhardt v. Tilton</u>, No. 1:07-cv-00539-LJO-DLB (PC), 2009 WL 56004, at *4 (E.D. Cal. January 7, 2009) (inmate's allegation that his diabetes placed him at increased risk of contracting Valley Fever is insufficient to show a serious risk of harm to inmate's health).
>
> More recent cases have found that an inmate claiming to be at an increased risk of contracting Valley Fever could state an Eighth Amendment claim.  <u>See Lua v. Smith</u>, No. 1:14-cv-00019-LJO-MJS, 2014 WL 1308605, at *2 (E.D. Cal. Mar. 31, 2014) (first prong of deliberate indifference claim is satisfied where plaintiff identifies a factor responsible for increasing the risk of contraction or severity of infection); <u>Sparkman v. California Dep't of Corrections and Rehabilitation</u>, No. 1:12-cv-01444-AWI-MJS (PC), 2013 WL 1326218, at *3 (E.D. Cal. March 29, 2013) (inmate with chronic lung disease meets first prong of Eighth Amendment standard); <u>Holley v. Scott</u>, No. 1:12-cv-01090-MJS (PC), 2013 WL 3992129, at *3 (E.D. Cal. Aug. 1, 2013) (collecting cases).  But many courts have found that the allegation of increased risk of contracting Valley Fever is insufficient to state a claim for violation of the Eighth Amendment.  <u>Smith v. Brown</u>, No. 1:12-cv-0238-AWI-JLT (PC), 2012 WL 1574651, at *4 (May 3, 2012) (allegation that inmate was African-American is insufficient to state a claim); <u>Harvey v. Gonzalez</u>, No. CV 10-4803-VAP (SP), 2011 WL 4625710, at *3 (C.D. Cal. July 27, 2011) (even if inmate alleged that he was at high risk of contracting Valley Fever and defendants were aware of his risk that would be insufficient to state a claim for violation of the Eighth Amendment); <u>Clark v. Igbinosa</u>, No. 1:10-cv-01336-DLB PC, 2011 WL 1043868, at *2 (E.D. Cal. March 21, 2011) (allegation that African-American inmate at greater risk of contracting Valley Fever is insufficient to state a claim); <u>Schroeder v. Yates</u>, No. 1:10-cv-00433-OWW-GSA PC, 2011 WL 23094, at *1, (E.D. Cal. January 4, 2011) (inmate alleging COPD and emphysema fails to state a claim); <u>James v. Yates</u>, No. 1:08-cv-01706-DLB (PC), 2010 WL 2465407, at * 4 (E.D. Cal. June 15, 2010) (allegation of higher risk due to medical conditions is not sufficient to state a claim where prison officials found inmate did not meet criteria for transfer).

<u>Smith</u>, No. 1:14-cv-00060-LJO-SAB (May 20, 2015), Findings and Recommendations Recommending Granting Defendants' Motions to Dismiss on the Grounds of Qualified

1   Immunity 29-31, ECF No. 164.

2         In Smith, the Court also considered the plaintiffs' argument that Defendants would have

3   notice that housing high risk inmates in areas endemic for Valley Fever by the June 2013 order

4   in Plata v. Brown, No. C01-1351 TEH, 2013 WL 3200587(N.D. Cal. June 24, 2013).  However,

5   the Plata court was considering the plaintiffs' request that the Receiver's cocci exclusion policy

6   be implemented.  The court ordered that the CDCR "adopt a modified version of the Receiver's

7   cocci exclusion  policy  that  reflects  Defendants'  agreement  to  transfer  all  inmates  who  are

8   classified  as  'high-risk'  under  the  medical  classification  system  and  is  consistent  with  the

9   factors  identified  by  the  American  Thoracic  Society  as  creating  an  increased  risk  of  severe

10  cocci."  2013 WL 3200587, at *14.  Plata is a class action in which the prison health care

11  system was found to be deficient and the Federal Receiver was appointed to oversee the system.

12  The Plata court only considered the effects of Valley Fever on inmates and did not address

13  whether housing inmates in the San Joaquin Valley where they are exposed to Valley Fever

14  would violate the Eighth Amendment.  Further, while a state may adopt a policy which is more

15  generous than what the Constitution requires, United States v. Heffner, 420 F.2d 809, 812 (4th

16  Cir. 1969),  the  policy  itself  does  not  establish  that  environmental  exposure  to  Valley  Fever

17  violates the Eighth Amendment.

18        It  is  rare  that  in  the  absence  of  "any  published  opinions  on  point  or  overwhelming

19  obviousness of illegality" that a court could "conclude that the law was clearly established on

20  the basis of unpublished decisions only."  Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002).

21  Review  of  the  case  law  demonstrates  that  while  the  law  in  this  area  is  in  the  process  of

22  becoming established, it is not clearly established even today that housing inmates, even those

23  at an increased risk for developing disseminated disease, in an endemic area would violate the

24  Eighth Amendment.  Based upon the review of case law within this Circuit, this Court finds that

25  it is subject to debate whether housing an inmate, even a high risk inmate, in an area where he

26  would be exposed to Valley Fever would violate the Eighth Amendment.

27        In Smith, the Court also found that:

28        . . . Plaintiffs are alleging that many of them are at an increased risk of developing

disseminated disease due to their race or health conditions.  Plaintiffs argue that even if it is not clearly established that it would violate the Eighth Amendment to house any inmate in the endemic area, the fact that certain inmates are at a higher risk of harm is sufficient to place prison officials on notice that they cannot be housed in these areas.  At the April 29, 2015 hearing, the Court inquired how Defendants would be on notice of when an increased risk would be sufficient to violate the Eighth Amendment.  Plaintiffs responded that any increased risk is sufficient to place Defendants on notice that housing them in an endemic area would violate the inmate's rights.

However, more than half of the residents of the affected areas fall with the groups that Plaintiffs identify as being at high risk.  See footnote 9.  In Castro, the Ninth Circuit recognized that "an officer is entitled to qualified immunity when the transition from a risk of some harm to a substantial risk of serious harm would not have been clear to a reasonable prison official."  Castro, 2015 WL 1948146, at *7 (emphasis in original).

Additionally, as discussed above, courts are not clear on whether an inmate can state a claim or what would be required for an inmate to state a claim due to being at an increased risk of contracting Valley Fever.  In this instance, the Court finds that it would not be clear to prison officials at what point an inmate's increased risk of developing disseminated disease due to his race or health conditions would rise to a substantial risk of serious harm.

Smith, No. 1:14-cv-00060-LJO-SAB, ECF No. 164 at 32-33.

Accordingly, the Court found that Defendants are entitled to qualified immunity for housing inmates who are at an increased risk of developing disseminated disease in the endemic areas.  In making this finding the Court also considered that "tens of thousands of individuals live, work, and raise families in the areas that are the most endemic."  Id. at 33.

Although some studies and reports have recommended considering relocating inmates to reduce the risk of Valley Fever infection, neither the State of California nor the federal government have implemented any standards or restrictions on exposure to Valley Fever.  Similarly, the recommendations have not been issued to any sector of the general public to relocate out of the area.  Prison officials could reasonably believe that since the government has not found it unsafe for non-imprisoned individuals to reside in areas in which Valley Fever spores are prevalent that it would not violate the Eighth Amendment to incarcerate inmates in these same areas.  Carroll, 255 F.3d at 473.

Finally, it is clear that even for those individuals that are at a higher risk from Valley Fever, exposure to Valley Fever is a risk that society tolerates.  The Seventh Circuit found it would be inconsistent to find that prisoners are entitled to a healthier environment than substantial numbers of non-imprisoned Americans.  Carroll, 255 F.3d at 473.  More than half of the individuals who reside in the endemic areas belong to the racial groups which Plaintiffs identify as high risk. (footnote omitted).

The Court finds that it is not beyond debate whether housing inmates in prisons in areas endemic for Valley Fever, a naturally occurring soil-borne fungus which

18

1    can lead to serious illness, would violate their rights under the Eighth
     Amendment.  al-Kidd, 131 S. Ct. at 2083.  For the reasons stated, the Court finds
2    that the right alleged here is not clearly established.  Defendants did not have fair
     notice that exposing inmates to an environmental risk of Valley Fever would
3    violate the Eighth Amendment.  Chappell, 706 F.3d at 1057 (court is to consider
     whether an officer would have fair notice that his conduct was unlawful and that
4    any mistake to the contrary would be unreasonable).

5    Smith, No. 1:14-cv-00060-LJO-SAB, ECF No. 164 at 33-34.)

6         The issue of qualified immunity is even more persuasive here, where Plaintiff is alleging

7    that housing him at PVSP in 2005, long before this body of case law existed, violated his rights

8    under the Eighth Amendment.  Therefore, even if Plaintiff was at an increased risk due to

9    belonging to a susceptible group, the Court finds that Defendants are entitled to qualified

10   immunity.  Since it would be futile to amend the claim due to Defendants' being entitled to

11   qualified immunity, the Court recommends that Defendants' motion to dismiss the claim for a

12   policy of operating PVSP in an area where Valley Fever is prevalent be granted, without leave

13   to amend.

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1                                 **V.**

2               **CONCLUSION AND RECOMMENDATION**

3       Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to

4 dismiss be granted on the ground of qualified immunity and this action be dismissed.

5       These findings and recommendations are submitted to the district judge assigned to this

6 action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

7 (14) days of service of this recommendation, any party may file written objections to these

8 findings and recommendations with the Court and serve a copy on all parties.  Such a document

9 should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

10 district judge will review the magistrate judge's findings and recommendations pursuant to 28

11 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

12 time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839

13 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

14

15 IT IS SO ORDERED.

16 Dated:   **May 20, 2015**

                                            UNITED STATES MAGISTRATE JUDGE